## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LAMBETH MAGNETIC STRUCTURES, LLC, | ) Civil Action No. 2:16-cv-00538-CB |
| | ) |
| | ) Judge Cathy Bissoon |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) **REDACTED** |
| SEAGATE TECHNOLOGY (US) HOLDINGS, INC. and SEAGATE TECHNOLOGY LLC, | ) |
| | ) |
| | ) |
| | ) |
| Defendants. | ) |
| | ) |

## BRIEF IN SUPPORT OF PLAINTIFF LAMBETH MAGNETIC STRUCTURES, LLC'S MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

Page

I.    INTRODUCTION .................................................................................................. 1

II.   LEGAL STANDARD ........................................................................................... 2

III.  ARGUMENT ........................................................................................................ 2

    A.    LMS Is Entitled To Entry of Partial Summary Judgment on Seagate's
        Withdrawn Defenses Of Anticipation, Obviousness, Improper
        Inventorship and Laches ............................................................................. 3

    B.    LMS Is Entitled To Partial Summary Judgment On Seagate's Affirmative
        Defense of Release ..................................................................................... 3

    █    LMS Is Entitled To Partial Summary Judgment As To Seagate's
        Affirmative Defense Of Express License As To The █████████
        ████████████████████████ ........................... 6

    D.    LMS Is Entitled To Partial Summary Judgment of Noninfringement As To
        Seagate's Affirmative Defenses Of Equitable Estoppel And Waiver ............ 8

        1.    Seagate Cannot Establish Equitable Estoppel .............................. 9

        2.    Seagate Cannot Establish Waiver .............................................. 10

    E.    LMS Is Entitled To Partial Summary Judgment As To Seagate's
        Affirmative Defense Of Lack Of Standing ................................................ 11

    F.    LMS Is Entitled To Partial Summary Judgment As To Seagate's
        Affirmative Defense Of Express or Implied License As To CMU ............. 15

    G.    LMS Is Entitled To Partial Summary Judgment As To Seagate's
        Affirmative Defense Of Unclean Hands ................................................... 17

    H.    LMS Is Entitled To Partial Summary Judgment As To Seagate's
        Affirmative Defenses of Patent Exhaustion And Double Recovery ............ 17

IV.   CONCLUSION ................................................................................................... 18

# TABLE OF AUTHORITIES

Page

## CASES

*A.C. Aukerman Co. v. R.L. Chaides Const. Co.*,
  960 F.2d 1020 (Fed. Cir. 1992) ....................................................................................... 11

*Advanced Video Tech. LLC v. HTC Corp.*,
  879 F.3d 1314 (Fed. Cir. 2018) ...................................................................................... 15

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) ........................................................................................................... 2

*Anton/Bauer, Inc. v. PAG, Ltd.*,
  329 F.3d 1343 (Fed. Cir. 2003) ...................................................................................... 16

*Augustine Med., Inc. v. Progressive Dynamics, Inc.*,
  194 F.3d 1367 (Fed. Cir. 1999) ...................................................................................... 17

*Barna v. Bd. of Sch. Directors of Panther Valley Sch. Dist.*,
  877 F.3d 136 (3d Cir. 2017) ............................................................................................ 11

*Bd. of Trustees of Leland Stanford Junior Univ. v. Roche Molecular Sys.*,
  563 U.S. 776 (2011) ......................................................................................................... 14

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) ........................................................................................................... 2

*Endo Pharm. Inc. v. Actavis, Inc.*,
  746 F.3d 1371 (Fed. Cir. 2014) ...................................................................................... 17

*Hernandez v. Jrpac Inc.*,
  No. 14-4176 (PAE), 2016 WL 3248493 (S.D.N.Y. June 9, 2016) .................................... 8

*Hynix Semiconductor Inc. v. Rambus Inc.*,
  645 F.3d 1336 (Fed Cir. 2011) ....................................................................................... 11

*Impression Prods., Inc. v. Lexmark Int'l, Inc.*,
  137 S. Ct. 1523 (2017) ....................................................................................................... 2

*Jazz Photo Corp. v. Int'l Trade Comm'n*,
  264 F.3d 1094 (Fed. Cir. 2001) ........................................................................................ 2

*John Bean Techs. Corp. v. Morris & Assocs., Inc.*,
  887 F.3d 1322 (Fed. Cir. 2018) ........................................................................................ 9

*Johnson v. Zerbst*,
  304 U.S. 458 (1938) ......................................................................................................... 11

*Judkins v. HT Window Fashions Corp.*,
    624 F. Supp. 2d 427 (W.D. Pa. 2009) ............................................................... 2

*Philips Elecs. N. Am. Corp. v. Contec Corp.*,
    312 F. Supp. 2d 639 (D. Del. 2004) ............................................................... 10

*Qualcomm Inc. v. Broadcom Corp.*,
    548 F.3d 1004 (Fed. Cir. 2008) ............................................................... 12

*Reilly v. NatWest Mkts. Grp. Inc.*,
    181 F.3d 253 (2d Cir. 1999) ......................................................... 8, 11, 12, 18

*SCA Hygiene Prod. Aktiebolag v. First Quality Baby Prod., LLC*,
    137 S. Ct. 954 (2017) ............................................................... 3, 11

*Tenneco Auto. Operating Co. v. Visteon Corp.*,
    375 F. Supp. 2d 375 (D. Del. 2005) ..................................................... 9, 10, 17

*Wang Labs., Inc., v. Mitsubishi Elecs. Am., Inc.*,
    103 F.3d 1571 (Fed .Cir. 1997) ............................................................... 16

*Winbond Elec. Corp. v. Int'l Trade Comm'n*,
    262 F.3d 1363 (Fed. Cir. 2001) ......................................................... 9, 17

## **STATUTES**

35 U.S.C. § 102 ............................................................... 1, 3, 19

35 U.S.C. § 103 ............................................................... 1, 3, 19

35 U.S.C. § 116 ............................................................... 1, 3, 19

Plaintiff Lambeth Magnetic Structures, LLC ("Plaintiff" or "LMS") moves for partial summary judgment on the following affirmative defenses set forth in Defendants Seagate Technology (US) Holdings and Seagate Technology LLC's (collectively "Seagate") Answer (Dkt. No. 25) filed on June 24, 2016:  Second Affirmative Defense (Invalidity) as to its defenses based on 35 U.S.C. §§ 102, 103, and 116; Third Affirmative Defense (Equitable Defenses/Unenforceability) as to equitable estoppel, laches, waiver, and unclean hands; Fourth Affirmative Defense (Release, License, and Exhaustion) as to express license, implied license, release, exhaustion and double recovery; and Ninth Affirmative Defense (Standing).

## I.    INTRODUCTION

Plaintiff LMS asserts that Seagate infringes United States Patent No. 7,128,988 ("the '988 Patent") by making, using and selling hard drives that include the novel magnetic structure claimed in the '988 Patent.  LMS's infringement proof is comprised of extensive reverse engineering that establishes Seagate's infringement of the '988 Patent.  Tellingly, Seagate has not responded with an affirmative assertion that its products do not meet the limitations of the asserted claims, but rather bases its non-infringement defense on attempting (but failing) to poke holes in LMS's extensive reverse engineering evidence.

Notably, Seagate has not challenged the novelty or nonobviousness of the claimed invention.  Instead, Seagate's only invalidity defenses are the fact-intensive defenses of patent ineligibility, written description, and enablement, which are heavily contested by LMS.  Seagate also asserts a plethora of defenses that attempt to limit or avoid its exposure for its infringement of LMS's novel and critical technology, including, for example, laches, equitable estoppel, release, standing and other defenses.  But Seagate did not come forward with any evidence to support these defenses during discovery.  Hence, partial summary judgment on each of Seagate's challenged affirmative defenses should be granted in LMS's favor as set forth herein.

-1-

## II.    LEGAL STANDARD

"Summary judgment is appropriate in a patent case, as in all other cases, when it is apparent from the entire record, viewed in the light most favorable to the non-moving party, that there are no genuine issues of material fact." *Judkins v. HT Window Fashions Corp.*, 624 F. Supp. 2d 427, 434 (W.D. Pa. 2009).   Summary judgment should be entered against a party "who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 434 (citing and quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

This motion challenges many of Seagate's affirmative defenses.  "The burden of establishing an affirmative defense is on the party raising the defense." *Jazz Photo Corp. v. Int'l Trade Comm'n*, 264 F.3d 1094, 1102 (Fed. Cir. 2001), *abrogated on other grounds by Impression Prods., Inc. v. Lexmark Int'l, Inc.*, 137 S. Ct. 1523 (2017).  In deciding a summary judgment motion, a court must "view the evidence presented through the prism of the substantive evidentiary burden." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986).  In the absence of evidence supporting these defenses, LMS is entitled to summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 317 (1986) ("[T]he plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.").

## III.    ARGUMENT

Seagate asserts a veritable potpourri of affirmative defenses to LMS's claim for patent infringement, each of which lacks substance.  These defenses include:  Release, Equitable Estoppel, Waiver, Express License/Standing, Implied License, Unclean Hands, Patent

Exhaustion and Double Recovery.  Dkt. No. 25 at 13-14.  Seagate failed to adduce sufficient evidence to support any of these defenses.

**A.**   **LMS Is Entitled To Entry of Partial Summary Judgment on Seagate's Withdrawn Defenses Of Anticipation, Obviousness, Improper Inventorship and Laches**

Seagate has withdrawn several affirmative defenses that were stated in its Answer—including defenses of invalidity for anticipation or obviousness under 35 U.S.C. §§ 102 or 103 (as included in its Second Affirmative Defense), invalidity under 35 U.S.C. § 116 (also included in its Second Affirmative Defense), and laches (Third Affirmative Defense)[1].  *See* Plaintiff's Concise Statement of Material Facts ("CSMF")[2] at ¶¶ 1, 2, 4, 5, App. Ex. 1 (stating withdrawal of anticipation, obviousness, § 116, and laches defenses); CSMF at ¶ 4, App. Ex. 2 (stating lack of contention with respect to § 116).  Seagate has presented no expert testimony on these defenses, and cannot raise a genuine issue of material fact supporting them.  CSMF at ¶ 3, App. Ex. 3 at 27:5-28:2.  Accordingly, Plaintiff respectfully requests entry of summary judgment on these affirmative defenses.

**B.**   **LMS Is Entitled To Partial Summary Judgment On Seagate's Affirmative Defense of Release**

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

---

[1] The Supreme Court has definitively held that laches is not a defense to a claim of patent infringement.  *SCA Hygiene Prod. Aktiebolag v. First Quality Baby Prod., LLC*, 137 S. Ct. 954, 967 (2017) ("Laches cannot be interposed as a defense against damages where the infringement occurred within the period prescribed by § 286.").

[2] Plaintiff's Concise Statement of Material Facts is incorporated herein.





---

[3] In its Interrogatory response, Seagate cites to additional sections of the Samsung-Acacia Agreement, but provides no evidence or even analysis as to why those sections provide any release to Seagate.  Ex. 4 at 15-16, 20. Also, Plaintiff notes that Seagate's interrogatory response sometimes refers to licenses, releases and covenants in the same breath.  This portion of the summary judgment motion focuses only on the "Release" Affirmative Defense, and does not address other legal theories espoused by Seagate, however denominated.







**D.     LMS Is Entitled To Partial Summary Judgment of Noninfringement As To Seagate's Affirmative Defenses Of Equitable Estoppel And Waiver**

In its Third Affirmative Defense, Seagate also asserts the defenses of equitable estoppel and waiver.  Dkt. No. 25 at 13.  Again, Seagate's pleading is bare bones; the only "facts" supporting these defenses are in Seagate's interrogatory responses.  But as a matter of law and undisputed fact, Seagate's factual allegations fall far short establishing these affirmative defenses.

The sole basis for these Seagate's Equitable Estoppel and Waiver defenses is that Dr. Lambeth, the inventor of the '988 Patent, has allegedly been aware of Seagate's infringement at least since December 2010, yet did not file suit until April 2016.  App. Ex. 4 at 29.  That contention is insufficient to prove either defense.

### 1.   Seagate Cannot Establish Equitable Estoppel

To prove its estoppel defense, Seagate must prove that:  "(1) the patentee engages in misleading conduct that leads the accused infringer to reasonably infer that the patentee does not intend to assert its patent against the accused infringer; (2) the accused infringer relies on that conduct; and (3) as a result of that reliance, the accused infringer would be materially prejudiced if the patentee is allowed to proceed with its infringement action."  *John Bean Techs. Corp. v. Morris & Assocs., Inc.*, 887 F.3d 1322, 1327 (Fed. Cir. 2018) (citations omitted).  Further, Seagate must prove that it *knew* about the patent.  *Winbond Elec. Corp. v. Int'l Trade Comm'n*, 262 F.3d 1363, 1374 (Fed. Cir. 2001) (where accused infringer admitted that it was unaware of the patent in suit, it could not assert an implied license through equitable estoppel); *see also Tenneco Auto. Operating Co. v. Visteon Corp.*, 375 F. Supp. 2d 375, 383 n.9 (D. Del. 2005) ("in order to assert equitable estoppel, an accused infringer must have knowledge of the patentee and its patent").

Seagate's estoppel defense fails because it cannot prove these elements.  Seagate admits that it was not aware of the patent until January 2015, when it received an **indemnification** request from another company.  App. Exs. 14 -16.  Thus, for almost the entire period of alleged delay (all but one year of it), Seagate was unaware of the patent.  Further, the circumstances under which it learned of the '998 Patent strongly suggested that Seagate's products might be accused of infringement, hardly an assurance by Dr. Lambeth that he would not pursue claims against Seagate.  Courts have granted summary judgment of no equitable estoppel in similar circumstances.  *Tenneco Auto.*, 375 F. Supp. 2d at 383 (granting summary judgment where defendant was unaware of the patents in suit until it received a cease-and-desist letter less than two months before the filing of the suit); *Philips Elecs. N. Am. Corp. v. Contec Corp.*, 312 F. Supp. 2d 639, 642 (D. Del. 2004), (granting summary judgment where defendant was unaware of

plaintiff's patents prior to suit; defendant "could not have been misled about Philips' intentions to enforce or not enforce Philips' patent rights, since CMT has no idea those rights existed").

Moreover, in its interrogatory response regarding equitable estoppel, Seagate failed to identify any evidence whatsoever that it "relied" on any alleged conduct of Lambeth occurring *after January 2015*, or that Seagate "would be materially prejudiced" because of reliance *after January 2015* on such alleged conduct. Indeed, Seagate contends that it released the accused products in 2006, and hence, it cannot establish reliance after 2015 (or even 2010). App. Ex. 4 at 14.

LMS sought to determine whether there was any such evidence when it served a Rule 30(b)(6) deposition notice on Seagate directed to the equitable estoppel defense. App. Ex. 13 at 85. In response, Seagate cited attorney-client privilege and refused to provide a witness. App. Ex. 13 at 85-86. Having refused to provide a witness to testify about information available to the company, Seagate is barred from providing any further evidence on the matter. *See Reilly*, 181 F.3d at 268-69 (affirming exclusion of witnesses where defendant failed to produce them for Rule 30(b)(6) deposition).

Accordingly, partial summary judgment should be granted to LMS on this issue.[4]

### 2.     Seagate Cannot Establish Waiver

In its interrogatory response, Seagate's only argument for waiver, as in the case of equitable estoppel, is that LMS delayed in suing Seagate. App. Ex. 4 at 29. In that response,

---

[4] Seagate has not shown any misleading conduct by LMS. Seagate only alleges "silence," which courts generally find is insufficient to prove misleading conduct. "[S]ilence alone will not create estoppel in patent infringement action unless there was clear duty to speak or somehow patentee's continued silence reinforces accused infringer's inference from patentee's known acquiescence that accused infringer will be unmolested." *A.C. Aukerman Co. v. R.L. Chaides Const. Co.,* 960 F.2d 1020 (Fed. Cir. 1992) (footnote, citations, and internal quotations omitted), *abrogated on other grounds by SCA Hygiene Prod. Aktiebolag v. First Quality Baby Prod., LLC,* 137 S. Ct. 954 (2017).

Seagate does not argue that LMS told Seagate at any time that LMS was foregoing any rights against Seagate, nor does it cite any document in which LMS knowingly and expressly waived any rights against Seagate—so clearly there was no express waiver. *Id.*; *see also Barna v. Bd. of Sch. Directors of Panther Valley Sch. Dist.*, 877 F.3d 136, 147 (3d Cir. 2017) ("Waiver … 'is the intentional relinquishment or abandonment of a known right.'"), citing *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938).

To the extent Seagate's Affirmative Defense of "waiver" may be construed to include "implied" waiver, Seagate's contention also fails. Implied waiver occurs when the patentee's "conduct was so inconsistent with an intent to enforce its rights as to induce a reasonable belief that such right has been relinquished." *Hynix Semiconductor Inc. v. Rambus Inc.*, 645 F.3d 1336, 1348 (Fed Cir. 2011) (quoting *Qualcomm Inc. v. Broadcom Corp.*, 548 F.3d 1004, 1020 (Fed. Cir. 2008)). In this case, however, the alleged delay could not have induced Seagate into a reasonable belief that LMS's patent rights had been relinquished because Seagate concedes it did not even know about the patent.

Finally, as with its equitable estoppel defense, Seagate refused to produce a Rule 30(b)(6) witness to testify about any facts known to Seagate relating to any alleged waiver. App. Ex. 13 at 85-86. For the reasons stated above, Seagate should be precluded from now having a witness provide a declaration about any "reasonable belief" Seagate had, or what that belief, if any, was based on. *Reilly*, 181 F.3d at 268-69.

Based on Seagate's discovery responses, Seagate's waiver defense is insufficient to withstand partial summary judgment.

### E.   LMS Is Entitled To Partial Summary Judgment As To Seagate's Affirmative Defense Of Lack Of Standing

In its Ninth Affirmative Defense, Seagate asserts that Plaintiff LMS lacks standing to assert the '988 Patent because Plaintiff LMS is not the true owner of the '988 Patent, but instead

that Carnegie Mellon University ("CMU") is the true owner of the '988 Patent.  Dkt. No. 25 at 14; App. Ex. 4 at 32-34.  Plaintiff is entitled to summary judgment on this defense because it is undisputed that Plaintiff LMS is the owner by assignment of the '988 Patent and that CMU has no rights in the '988 Patent.  App. Exs. 17-18.

Dr. David Lambeth, Professor Emeritus at CMU and the sole inventor of the '988 Patent,[5] filed the provisional application that ultimately matured into the '988 Patent on August 29, 2001, attesting under oath that he was the true and original inventor.  *Id.*  Dr. Lambeth assigned his rights in the invention to Lambeth Systems in a written assignment recorded in the United States Patent Office ("USPTO") on August 29, 2003.  App. Ex. 18 at LAMBETH-000222056-57.  Thereafter, a series of written assignments were executed and recorded culminating in the written assignment to Plaintiff LMS recorded in the USPTO on March 21, 2014.  App. Ex. 18 at LAMBETH-000222077.  This case was filed on April 29, 2016.  (Dkt. No. 1).  It is undisputed that there is no written assignment to CMU.  CSMF at ¶ 88.

Although not material to the resolution of this issue, it is undisputed that Dr. Lambeth was on an unpaid leave of absence from CMU between September 1, 1999 and August 31, 2001.  App. Ex. 19 at 300:20-302:25, App. Ex. 20.  The provisional application that matured in to the '988 Patent was filed on August 29, 2001; Dr. Lambeth conceived and reduced to practice the invention that matured into the '988 Patent while on his unpaid leave from CMU.  App. Ex. 21 at 3.   Upon returning to CMU from his leave of absence, Dr. Lambeth disclosed to CMU that he filed the provisional patent application, identifying both the title and application number, and the fact that he filed the application on behalf of Lambeth Systems.  App. Ex. 22 at 9; App. Ex. 19 at

---

[5] In its Second Affirmative Defense, Seagate contested inventorship but as discussed above has since withdrawn that defense.

As a general rule, the "rights in an invention belong to the inventor." *Bd. of Trustees of Leland Stanford Junior Univ. v. Roche Molecular Sys.,* 563 U.S. 776, 785 (2011) ("Stanford"):

> Although much in intellectual property law has changed in the 220 years since the first Patent Act, the basic idea that inventors have the right to patent their inventions has not. Under the law in its current form, "[w]hoever invents or discovers any new and useful process, machine, manufacture, or composition of matter ... may obtain a patent therefor." 35 U.S.C. § 101. The inventor must attest that "he believes himself to be the original and first inventor of the [invention] for which he solicits a patent." § 115. In most cases, a patent may be issued only to an applying inventor, or—because an inventor's interest in his invention is "assignable in law by an instrument in writing"—an inventor's assignee. §§ 151, 152, 261.

---

[6] Notably, Western Digital conceded its standing defense.

A patent assignment must be in writing and must contain a specific language that transfers rights to an alleged assignee.  35 U.S.C. § 261; *Stanford*, 563 U.S. at 785-786; *Advanced Video Tech. LLC v. HTC Corp.*, 879 F.3d 1314 (Fed. Cir. 2018).  Even an explicit promise to assign in the future is not sufficient to transfer ownership.  Recently, in *Advanced Video Technologies*, the Federal Circuit confirmed that even where an employment agreement contains an express agreement to assign all inventions to the employer, absent language of a present assignment, ownership is not transferred to the employer.  The Court concluded that the employer lacked standing to sue because one of four inventor-employees failed to execute an assignment transferring rights to the employer, and hence remained the owner of the asserted patent.  The employment agreement at issue in *Advanced Video Technologies* included the following explicit agreement to assign all inventions:

> I agree that I will promptly make full written disclosure to the Company, will hold in trust for the sole right and benefit of the Company, and will assign to the Company all my right, title, and interest in and to any and all inventions, . . . during the period of time I am in the employ of the Company.

The employment agreement also included the following language:

> I hereby waive and quitclaim to the Company *any* and all claims, of any nature whatsoever, which I now or may hereafter have infringement [sic] of any patents, copyrights, or mask work rights resulting from any such application assigned hereunder to the Company.

Notwithstanding these express contractual requirements, the Federal Circuit found that the language constituted only a promise to assign in the future, and thus the inventor remained the owner of the patent.  Here, there is no written assignment to CMU; and none of the agreements Seagate cites change this undisputed fact.

Plaintiff LMS is the owner of the '988 Patent and partial summary judgment should be granted to Plaintiff on Seagate's standing defense.

**F.      LMS Is Entitled To Partial Summary Judgment As To Seagate's**
**Affirmative Defense Of Express or Implied License As To CMU**

Seagate asserts as part of its Fourth Affirmative Defense that Seagate has an express or

implied license to the '988 Patent pursuant to its 1997 and 2000 Associate Agreements between

CMU and Seagate ("1997 and 2000 Agreements") relating to Seagate's sponsorship of the

DSSC.  But as discussed above, CMU does not own the '988 Patent and thus, did not and could

not license the '988 Patent to Seagate.  Hence, summary judgment should be entered Seagate's

license defense to the extent it relies on an express license in any written agreement between

CMU and Seagate.

Seagate also asserts that it has an implied license to the '988 Patent.  In general, a license

to a patent is made in writing, but an implied license can arise under limited circumstances, most

of the time attendant to the patent owner's sale of a product that includes the patented invention.

"A patentee grants an implied license to a purchaser when (1) the patentee sells an article that

has no noninfringing uses and (2) the circumstances of the sale plainly indicate that the grant of a

license should be inferred."  *Anton/Bauer, Inc. v. PAG, Ltd.*, 329 F.3d 1343, 1350 (Fed. Cir.

2003) (citation omitted).  An implied license can also arise via equitable estoppel.  An implied

license by equitable estoppel requires proof that: (1) the patentee, through statements or conduct,

gave an affirmative grant of consent or permission to make, use, or sell to the alleged infringer;

(2) the alleged infringer relied on that statement or conduct; and (3) the alleged infringer would,

therefore, be materially prejudiced if the patentee is allowed to proceed with its claim.  *Wang*

*Labs., Inc., v. Mitsubishi Elecs. Am., Inc.*, 103 F.3d 1571, 1581 (Fed .Cir. 1997).  As with

Seagate's other affirmative defenses, "[t]he burden of proving that an implied license exists is on

the party asserting an implied license as a defense to infringement." *Endo Pharm. Inc. v. Actavis,*

*Inc.*, 746 F.3d 1371, 1374 (Fed. Cir. 2014), *citing Augustine Med., Inc. v. Progressive Dynamics,*

*Inc.*, 194 F.3d 1367, 1370 (Fed. Cir. 1999).

-15-

Seagate contends that "David Lambeth's communication or conduct toward Seagate created a reasonable inference that David Lambeth consented to Seagate's use of the alleged invention of the '988 Patent." App. Ex. 4 at ¶ 28.  But as discussed above, an accused infringer cannot claim an implied license through equitable estoppel unless the accused infringer had knowledge of the patent.  *Winbond Elec. Corp. v. Int'l Trade Comm'n*, 262 F.3d 1363, 1374 (Fed. Cir. 2001) (where accused infringer admitted that it was unaware of the patent in suit, it could not assert an implied license through equitable estoppel); *see also Tenneco Auto. Operating Co. v. Visteon Corp.*, 375 F. Supp. 2d 375, 383 n.9 (D. Del. 2005) ("in order to assert equitable estoppel, an accused infringer must have knowledge of the patentee and its patent").  Here, Seagate asserts that it did not know of the '988 Patent until 2015, and hence, could not have an implied license by virtue of Dr. Lambeth's acts described in Seagate's Second Amended Interrogatory responses, all of which occurred long before 2015.  Moreover, the '988 patent application was not even filed at the time of the any of the events that Seagate claims give rise to the implied license.

Seagate claims Dr. Lambeth's communications and/or conduct towards Seagate created a reasonable inference that he consented to Seagate's use of the '988 Patent.  App. Ex. 4 at 28.  But the timeline of the events refutes any possibility of finding an implied license.  It is undisputed that Dr. Lambeth took a leave of absence from the DSSC in February 1999; resigned from the DSSC in August 1999; and never thereafter re-associated with the DSSC.  App. Ex. 25.  The '988 Patent was not conceived until April 2000 and the application for the '988 Patent was not filed until August 2001.  App. Ex. 21; Dkt. 1-A. In his CMU Annual Faculty Report for the period ending December 31, 2001, Dr. Lambeth disclosed to CMU that he filed the provisional application that matured into the '988 Patent on behalf of Lambeth Systems.  App. Exs. 22, 19 at at 139:5-21.  Aware of Dr. Lambeth's filing on behalf of Lambeth Systems from the time it was

-16-

a provisional application, CMU nevertheless does not and has never claimed an interest in ownership of the '988 Patent.  App. Ex. 19 at 303:3-4.  Thus, the activity and funding that Seagate cites as giving rise to an implied license, all of which occurred prior to the filing of the provisional application, cannot give rise to an implied obligation when CMU itself—with full knowledge of the filing—agreed that is has no ownership rights in the '988 Patent, and thus, can grant no license at all – express or implied.

In view of the foregoing, partial summary judgment on both the express and implied CMU licenses should be granted.

**G.    LMS Is Entitled To Partial Summary Judgment As To Seagate's Affirmative Defense Of Unclean Hands**

In its Third Affirmative Defense, Seagate asserts unclean hands.  Though it has the burden of proof on this defense, Seagate has not identified any evidence of alleged unclean hands.  It refused to provide a Rule 30(b)(6) witness on the topic, and should be precluded from raising the defense now.  *Reilly,* 181 F.3d at 268-69 (affirming exclusion of witnesses where defendant failed to produce them for Rule 30(b)(6) deposition).

**H.    LMS Is Entitled To Partial Summary Judgment As To Seagate's Affirmative Defenses of Patent Exhaustion And Double Recovery**



IV.     **CONCLUSION**

For the foregoing reasons, summary judgment should be granted on Seagate's Second Affirmative Defense (Invalidity) as to its defenses based on 35 U.S.C. §§ 102, 103, and 116; Third Affirmative Defense (Equitable Defenses/Unenforceability) as to equitable estoppel, laches, waiver, and unclean hands; Fourth Affirmative Defense (Release, License, and Exhaustion) as to express license, implied license, release, exhaustion and double recovery; and Ninth Affirmative Defense (Standing).

Dated:  October 11, 2018                    Respectfully Submitted,

*/s/ Denise M. De Mory*
John W. McIlvaine, III
Christian D. Ehret
**THE WEBB LAW FIRM**
One Gateway Center
420 Ft. Duquesne Blvd., Suite 1200
Pittsburgh, PA 15222
T: (412) 471-8815
F: (412) 471-4094
jmcilvaine@webblaw.com
cehret@webblaw.com

Henry C. Bunsow
Denise De Mory
Craig Allison
Christina M. Finn
Dino Hadzibegovic
**BUNSOW DE MORY LLP**
701 El Camino Real
Redwood City, CA 94063
Telephone: (650) 351-7248
Facsimile: (415) 426-4744
hbunsow@bdiplaw.com
ddemory@bdiplaw.com
cfinn@bdiplaw.com
callison@bdiplaw.com
dhadzibegovic@bdiplaw.com

*Counsel for Plaintiff*
*Lambeth Magnetic Structures, LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 11th day of October, 2018, I electronically filed the foregoing PLAINTIFF LAMBETH MAGNETIC STRUCTURES, LLC'S BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT with the Clerk of the Court using the CM/ECF system which sent notification to all counsel of record.

**BUNSOW DE MORY LLP**

*/s/ Denise M. De Mory*
Denise M. De Mory