IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LAMBETH MAGNETIC STRUCTURES, LLC, <br>                 Plaintiff, <br> v. <br><br> SEAGATE TECHNOLOGY (US) HOLDINGS, INC., *et al.*, <br>                 Defendants. | Civil Action No. 16-538 <br><br> Judge Cathy Bissoon |

## **MEMORANDUM ORDER**

The pending post-trial motions (Docs. 510 & 513) will be denied.

Although the Court is not entirely surprised that the parties have renewed their JMOL motions, it would seem fairly obvious to a sophisticated reader that neither side comes close to meeting the requisite standards.

In arguing that that no reasonable jury could have found for Seagate on infringement, LMS relies heavily on the testimony of its own experts. *See generally* LMS Br. (Doc. 514) at 20–24. But the jury had multiple reasons to (and obviously did) discredit that testimony, *see* Seagate Opp'n Br. (Doc. 523) at 3–4 (citing evidence), which, in itself, is sufficient to support the non-infringement verdict. *See* Star Sci., Inc. v. R.J. Reynolds Tobacco Co., 655 F.3d 1364, 1378 (Fed. Cir. 2011) ("[I]t was not unreasonable for the jury to discredit the testimony of [plaintiff's] expert and find that the [asserted] patents were not infringed."). Additionally, Seagate presented sufficient affirmative evidence to uphold the verdict. *See* Seagate Opp'n Br. at 4–9 (citing evidence supporting the jury's non-infringement finding based on four independent reasons).

Similarly, Seagate's assertion that no reasonable jury could have found for LMS on validity, *see generally* Seagate Br. (Doc. 511) at 5–24, is untenable. *See* LMS Opp'n Br. (Doc. 524) at 5–13, 21–22 (citing evidence). To be sure, just as the jury was free to discredit the testimony of LMS's experts on infringement, it also reasonably could give little or no weight to the testimony of Seagate's expert on invalidity. *See id.* at 13 (rebutting inferences drawn by Seagate's expert) & 18–20 (highlighting disputed expert testimony). And Seagate's contention that LMS's expert testimony on enablement was legally deficient under Federal Circuit precedent, Seagate Br. at 15 & 17, is equally unavailing.[1] *See* LMS Opp'n Br. at 16–18 (demonstrating that Trustees and Idenix are inapposite).

Finally, because the record is not "critically deficient of the minimum quantum of evidence" upon which the jury could reasonably base its verdict, Acumed LLC v. Advanced Surgical Servs., Inc., 561 F.3d 199, 211 (3d Cir.2009), the Court also will deny the parties' requests for a new trial.[2] *See* Levy v. Schmidt, 573 F. App'x 98, 105 (3d Cir. 2014) ("[T]he

---

[1] Parenthetically, the Court agrees with LMS that Seagate misapprehends the written description requirement. *Compare* Seagate Br. at 22 (arguing that written description is lacking because (1) Lambeth did not physically possess his invention on a polycrystalline template at the time of filing, and (2) the specification does not disclose a single working polycrystalline embodiment) *with, e.g.,* Alcon Rsch. Ltd. v. Barr Lab'ys, Inc., 745 F.3d 1180, 1191 (Fed. Cir. 2014) ("[W]ritten description is about whether the skilled reader of the patent disclosure can recognize that what was claimed corresponds to what was described; it is not about whether the patentee has proven to the skilled reader that the invention works, or how to make it work, which is an enablement issue."); BASF Plant Sci., LP v. Commonwealth Sci. & Indus. Rsch. Organisation, 28 F.4th 1247, 1267 (Fed. Cir. 2022) ("[A]ctual reduction to practice is not a requirement of possession . . . ."); ScriptPro LLC v. Innovation Assocs., Inc., 833 F.3d 1336, 1341 (Fed. Cir. 2016) ("[A] specification's focus on one particular embodiment or purpose cannot limit the described invention where that specification expressly contemplates other embodiments or purposes.").

[2] The Court will not revisit any of its prior rulings identified by LMS in conjunction with its request for a new trial, *see generally* LMS Br. at 2–20 & 25, based on the reasons advanced by Seagate, *see generally* Seagate Opp'n Br. at 11–25, which are incorporated by reference herein. Suffice to say, even if the Court erred (it did not), LMS failed to establish prejudice. *See* GN Netcom, Inc. v. Plantronics, Inc., 930 F.3d 76, 88 (3d Cir. 2019) (An erroneous ruling is

jury's finding was based on a legally sufficient evidentiary basis, and was thus, not contrary to the weight of the evidence.").

Consistent with the foregoing, the parties' posttrial motions (**Docs. 510 & 513**) are **DENIED**.

IT IS SO ORDERED.

November 22, 2022                               s/Cathy Bissoon
                                                Cathy Bissoon
                                                United States District Judge

cc (via ECF email notification):
All Counsel of Record

---

harmless "if it is highly probable that the error did not affect the outcome of the case."). To the extent LMS attempts to manufacture prejudice, the Court makes the following observations lest there be any ambiguity. First, contrary to LMS's assertions, LMS Br. at 7 & 10, the Court prohibited Dr. Lambeth only from offering undisclosed expert testimony. Apparently, LMS still does not appreciate this ruling. *See id.* at 10 (arguing that "testimony from Dr. Lambeth regarding the meaning of his magnetic measurements would have helped to show that similar measurements in Seagate's internal testing documents for its accused write heads further support that those write heads infringe."). Second, LMS's contention that the Court allowed Seagate to disregard the construction for "uniaxial" vis-à-vis "exchange coupling," *id.* at 4–6, is meritless. *See* 4/13/22 Trial Tr. (Doc. 491) at 6:16–19 ("[Seagate's] expert is entitled to explain the science, just as [LMS's] expert was, behind why something is or isn't consistent with the Court's claim construction in this case . . . ."). And it is belied by LMS's position in opposition to Seagate's JMOL. *See* LMS Opp'n Br. at 15 (arguing that "the specification also explains that placing the bcc layer directly on the fcc layer will assist with exchange coupling and result in the desired uniaxial behavior."). Finally, while LMS asserts that the Court ruled inconsistently as to the use of deposition testimony, LMS Br. at 18–19, the record reflects otherwise. *Compare* LMS Br. at 19 (representing that "the Court came to the opposite conclusion the very next day") *with* 4/11/22 Trial Tr. (Doc. 475) at 8:15–19 ("You can certainly ask [the witness] if he's aware of [the deposition testimony], but it doesn't make the deposition testimony any less hearsay.").

3